IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD SOTO, | ) | |
| Petitioner | ) | C.A. No. 05-316 Erie |
| | ) | |
| v. | ) | District Judge Cohill |
| | ) | Magistrate Judge Baxter |
| WARDEN JAMES SHERMAN, | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the instant *Petition for Writ of Habeas Corpus* ("Petition") be denied and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner Richard Soto, presently incarcerated at the McKean Federal Correctional Institution in Bradford, Pennsylvania, brings the instant petition for writ of habeas corpus. Petitioner is challenging the Bureau of Prisons' ("BOP") denial of his eligibility for a sentence reduction pursuant to 18 U.S.C. §3621(e)(2)(B) ("Section 3621(e)"). Petitioner claims that the BOP abused its discretion by excluding him from eligibility for a one year sentence reduction under Section 3621(e) for completing a substance abuse treatment program. In particular, Petitioner contends that the denial of the one-year sentence reduction was based upon the BOP's application of a 1997 interim regulation, which was promulgated in violation of the Administrative Procedures Act ("APA"), and which was applied to him in violation of the *Ex Post Facto* Clause of the United States Constitution . (See Petition at ¶ 9 and supporting Memorandum at pp. 2-3). As relief, Petitioner seeks to be deemed eligible for early release under Section 3621(e).

**A.    Factual History**

On June 17, 1996, Petitioner was sentenced by the United States District Court for the District of Connecticut, to serve 141 months in prison, followed by a five year term of supervised release, for Conspiracy to Possess with Intent to Distribute and Distribution of Heroin, Marijuana, Cocaine, and Cocaine Base, in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Document # 9, Response to Petition, Document 2a at pp. 2-3). At the time of sentencing, the sentencing court applied a two-level Specific Offense Characteristic ("SOC") enhancement, because it determined that Petitioner had possessed a dangerous weapon in connection with the offenses of which he was convicted. (See Declaration of Monika Recktenwald ("Recktenwald Declaration") attached to Document # 9, Response to Petition, as Document 2, at ¶ 3).

Petitioner commenced service of his federal sentence on July 24, 1996. Assuming that he receives all Good Conduct Time available to him under U.S.C. § 3624(b), Petitioner's projected release date is October 14, 2006. (Document # 9, Response to Petition, Document 1a).

On or about May 5, 1999, while Petitioner was incarcerated at the Federal Prison Camp in Morgantown, West Virginia, he received notice that he was not eligible for early release under 18 U.S.C. § 3621(e), because his criminal offense was one that the director of the BOP had determined should preclude inmates from eligibility for the early release benefit. (Document # 9, Response to Petition, Document 2b at p. 1). In particular, Petitioner was found ineligible for the sentence reduction because his sentencing court had applied a two-point SOC enhancement to his sentence for possessing a firearm in connection with a drug trafficking offense. (Document # 9, Response to Petition, Document 2c). Nevertheless, Petitioner was found eligible to participate in the Residential Drug Abuse Treatment Program ("RDAP") and was placed on the RDAP waiting list at the Federal Medical Center in Devens, Massachusetts ("FMC-Devens") on May 12, 1999. (See Document # 7, Response to Petition, Document 1e).

On April 5, 2004, the Drug Abuse Program Coordinator at FMC-Devens received a written request from Petitioner "stating [that] he did not want to [participate in] the RDAP" at FMC-Devens. (Document # 9, Response to Petition, Document 2e). Subsequently, on April 29, 2004, Petitioner signed a form indicating that he was voluntarily electing to decline to

participate in the RDAP at FMC-Devens, but was willing to participate in an RDAP at a Federal Prison Camp. (Document # 9, Response to Petition, Document 2f at p. 1).

On or about July 23, 2004, Petitioner was designated to FCI McKean. (Document # 9, Response to Petition, Document 1a at p. 1). Petitioner commenced the RDAP at FCI McKean on September 2, 2004. (Document # 9, Response to Petition, Document 1e). Petitioner completed the RDAP at FCI McKean on June 14, 2005. (Id.). On November 8, 2005, Petitioner filed the instant Petition challenging the denial of the one-year sentence reduction offered by 18 U.S.C. § 3621(e).

### B.     Subject Matter Jurisdiction

Initially the Court notes that, although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning *execution* of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir.), cert. denied, 429 U.S. 851 (1976). Because Petitioner is primarily challenging the terms (i.e. execution) of his sentence, his habeas petition is properly brought under Section 2241.

### C.     Exhaustion

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court. United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); United States v. Keller, 58 F.3d 884 (2d Cir. 1995); United States v. Brann, 990 F.2d 98, 104 (3d Cir. 1993). The Bureau of Prisons is the agency charged with administering the federal prison system. Reno v. Koray, 515 U.S. 50, 57 (1995); Wilson, 503 U.S. at 334-335. For federal prisoners challenging Bureau of Prisons determinations, the initial venue is the administrative process. The Bureau of Prisons codified its Administrative Remedy Program ("ARP") in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement.

Respondent has not challenged Petitioner's exhaustion of his administrative remedies. Accordingly, his Petition is ripe for review by this Court.

### D.     DISCUSSION

#### 1.     Application of 18 U.S.C. § 3621(e)

Congress enacted the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA") on September 13, 1994.  As part of the VCCLEA, Congress amended 18 U.S.C. §3621(e)- Substance Abuse Treatment in Federal Prisons, to provide incentives for inmates to successfully compete residential drug treatment programs.  The early release provisions of Section 3621(e) were enacted as part of this amendment, and provide, in pertinent part, as follows:

> **Period of Custody.** - - The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B)(1995).

In 1995, shortly after the enactment of Section 3621(e), the BOP published a rule to implement the early release incentive.  28 C.F.R. § 550.58.  Because the statute explicitly applied the incentive only to prisoners convicted of "nonviolent offense[s]," the BOP ranked ineligible for early release all inmates who were incarcerated for "crime[s] of violence." Id.  The BOP then attempted through a Program Statement to define "crimes of violence," which included drug offenses that involved a two-level sentence enhancement for possession of a firearm  P.S. 5162.02, §9 (July 24, 1995).  This resulted in a division among the Circuits over the validity of the BOP's definition of "crimes of violence."  The Eleventh Circuit was among the Circuits that held that Section 3621(e) required the BOP to look only to the offense of conviction and not to sentencing factors in determining whether an offender was convicted of a "nonviolent offense," and was, therefore, eligible for early release. See Byrd v. Hasty, 142 F.3d 1395, 1398 (11th Cir. 1998); see also Roussos v. Menifee, 122 F.3d 159, 164 (3d Cir. 1997);

4

Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998).  But see Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999); Venegas v. Henman, 126 F.3d 760, 763 (5th Cir. 1997) (upholding the BOP's classification of drug offenses accompanied by firearm possession as violent crimes).

The split of authority among the Circuits prompted the BOP to amend and supplement its regulations on Drug Abuse Treatment Programs, 28 C.F.R. Subpart F, Section 550.50, *et. seq.*, in October 1997.[1]  In contrast to its earlier regulations, the BOP no longer relied upon the definition of "crimes of violence" to exclude from early release offenders who possessed firearms in connection with their offenses.  Rather, the BOP relied upon its discretion to prescribe additional early release criteria by amending 28 C.F.R. § 550.58 to provide, in pertinent part:

> An inmate who was sentenced to a term of imprisonment pursuant to [the Sentencing Guidelines] for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
> (a)     Additional Early Release Criteria
>
>     (1)     **as an exercise of the discretion vested in the Director of the Federal Bureau of Prisons**, the following categories of inmates are not eligible for early release:
>
>         \*          \*          \*
>
>     (vi)     Inmates whose current offense is a felony:
>
>         \*          \*          \*
>
>        (B)     That involved the **carrying**, **possession**, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device).

28 C.F.R. § 550.58 (a)(1)(vi)(B)(2000) (emphasis added).

The foregoing BOP regulation was upheld by the Supreme Court as a valid exercise of

---

[1] The effective date of the amended regulation was the date it was filed with the Federal Register and made available to the public.  Although the amendments were not actually published in the Federal Register until October 15, 1997, they were submitted to the Federal Register and made publicly accessible on October 9, 1997.  See 62 Fed. Reg. 53690-01, 1997 WL 630755 (Oct. 15, 1997).

the BOP's discretion under 18 U.S.C. § 3621(e). See Lopez v. Davis, 531 U.S. 230 (2001). In Lopez, an inmate challenged the BOP's determination that he was not eligible for early release based upon his conviction under 21 U.S.C. § 841, to which a two-point "specific offense characteristic" ("SOC") enhancement for "carrying, possession, or use of a firearm" had been applied. The Court held that the BOP's regulation was a permissible construction of the statute, and that the BOP had the discretion to categorically deny early release to felons whose offenses involved the "carrying, possession, or use of a firearm." Lopez, 531 U.S. at 242. The Court reasoned that 28 C.F.R. § 550.58 was permissible because, in promulgating that regulation, the BOP had reasonably concluded that an inmate's involvement with firearms in connection with the commission of a felony suggested a readiness to resort to life-endangering violence. Id. at 244; see also Venegas v. Henman, 126 F.3d 760, 763-765 (5th Cir. 1997), cert. denied, 523 U.S. 1108 (1998)("[t]he discretion vested in the [BOP] to determine what offense, in context, are violent for purposes of section 3621(e) and, therefore, not appropriate for exposure to the incentive of early release, fulfills the will of Congress and satisfies both the wording and the intent of the statute")

In conjunction with the above regulation, the BOP also issued Program Statement 5162.04 on October 9, 1997, to provide additional guidance for determining whether an inmate should receive a reduction in sentence under 18 U.S.C. § 3621(e). In addition to providing a list of all offenses considered to be "crimes of violence" that precluded early release under § 3621(e), P.S. 5162.04 also provides a list of offenses that the BOP's Director determined, in her discretion, should exclude an inmate from consideration for the sentence reduction. (Document # 9, Response to Petition, Document 1f). In particular, Section 7(b) of P.S. 5162.04 specifies that inmates with convictions for offenses listed in 21 U.S.C. §§ 841 and 846 should be excluded from certain program benefits, including early release, where a two-point sentencing enhancement was applied based on the possession of a dangerous weapon in connection with the underlying offense. (Document # 9, Response to Petition, Document 1f at pp. 11-14).

### 2.     Administrative Procedures Act

In his Reply to Respondent's Response to Petition [Document # 8], Petitioner argues that 28 C.F.R. § 550.58 was not promulgated in accordance with the Administrative Procedure Act ("APA") and, thus, is not valid. As a result, Petitioner argues that the BOP lacked the discretion to exclude him from the early release provisions of Section 3621(e). In making this argument, Petitioner relies exclusively upon the holding of Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005).

In Paulsen, the Ninth Circuit held that, because the BOP had published its 1997 interim rule on October 15, 1997, and had made it effective as of October 9, 1997, the interim rule was promulgated in violation of the APA's notice-and-comment requirements. Paulsen, 413 F.3d at 1004-05. As a result, the Ninth Circuit concluded that certain inmates who had been denied early release between October 9, 1997 and December 22, 2000 (the date the interim rule became final), should not be evaluated for early release under the 1997 interim rule.

The Respondent argues that the present case is distinguishable from Paulsen because 28 C.F.R. § 550.58 became final on December 22, 2000, after the requisite three year notice-and-comment period and well before Petitioner's election to re-enlist for the RDAP on June 10, 2004. (Document # 9, Response to Petition, at pp.12-13). As a result, Respondent argues that any procedural error in the promulgation of the 1997 interim rule had no impact on Petitioner and was, thus, harmless, citing Buschmann v. Schweiker, 676 F.2d 352, 358 (9th Cir. 1982)(holding that an improperly promulgated interim rule is invalid as to persons disqualified prior to the issuance of the final rule). This Court agrees with Respondent.

As cited by Respondent, to demonstrate harm, Petitioner would have to demonstrate that: (i) during the period in which the advanced notice would have taken place, the BOP took some action based on the interim rule that affected him adversely; and (ii) that the BOP's adverse action would have been different if it had waited until the expiration of a reasonable advance notice period in which to effect the rule. See U.S. Steel Corp. v. U.S. E.P.A., 605 F.2d 283, 291 (7th Cir. 1979), cert. denied, 444 U.S. 1035 (1980)(declining to reverse agency action for alleged non-compliance with advance notice rule if notice and comment had occurred before

effective date). Although Petitioner was initially determined to be ineligible for early release in May 1999, before the interim rule became final, this determination had no adverse effect on Petitioner because he did not voluntarily re-enlist for RDAP until June 10, 2004, after previously having declined to participate in the program. Thus, the ultimate determination to deny Petitioner the benefit of the early release provisions of 18 U.S.C. § 3621(e) did not occur until well after the operative regulation became final. As a result, Petitioner was not adversely affected by the premature exercise of 28 C.F.R. § 550.58 in the same way as the Paulsen petitioners were. Accordingly, Petitioner's challenge to the validity of 28 C.F.R. § 550.58, as applied to this case, must fail.

### 3.  *Ex Post Facto* Challenge

Petitioner also raises the argument that the application of the 1997 interim rule to preclude him from early release under 18 U.S.C. § 3621(e) violated the *Ex Post Facto* Clause of the United States Constitution, because the rule was promulgated after his conviction and sentence. [Document # 10 at pp. 5-6). This argument lacks merit.

The *Ex Post Facto* Clause of the United States Constitution provides that "[n]o state shall . . . pass any . . . *ex post facto* law." U.S. Const. Art. 1, § 10. The Supreme Court has instructed that "[t]o fall within the *ex post facto* prohibition, a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 117 S. Ct. 891, 896 (1997) (citation and quotation omitted).

In analyzing whether a law violates the *Ex Post Facto* Clause, the courts are required to determine whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995). See also Garner v. Jones, 529 U.S. 244, 255 (2000) (when the rule at issue does not by its own terms show a significant risk, the burden is on the parole applicant to demonstrate "that its retroactive application will result in a longer period of incarceration than under the earlier rule"); Johnson v. United States, 529 U.S. 694 (2000) (to succeed in *ex post facto* claim

petitioner must prove that legislation increases the penalty from whatever the law provided when the criminal act was committed.). Cf. Hameen v. State of Delaware, 212 F.3d 226, 240 (3d Cir. 2000) (focus of *ex post facto* inquiry is not on whether legislative change produces some ambiguous sort of disadvantage ... rather, proper focus is whether the law alters the definition of criminal conduct or increases the penalty by which a crime is punishable) (citations omitted).

Thus, to succeed in establishing his *ex post facto* claim, Petitioner must be able to prove that the alleged change in law resulted in an increased penalty. This he cannot do.

Simply stated, the regulation at issue did not increase the penalty for Petitioner's offense; rather, it merely deprived him of an opportunity to take advantage of a discretionary early-release provision. Consequently, no *ex post facto* violation occurred. See, e.g., Stiver v. Meko, 130 F.3d 574, 578 (3d Cir. 1997)(finding that the BOP's application of 3621(e)(2)(B) did not constitute an *ex post facto* violation because the inmate suffered no disadvantage as a result of the regulation: "the legal consequences of his crime were the same when he committed it as they are today"); Warren v. Miles, 230 F.3d 688, 692-93 (5th Cir. 2000)(denial of early release was not an *ex post facto* violation; program statement "merely clarif[ied]" the law regarding early release eligibility, and was not a change that placed petitioner at risk of increased punishment); Fristoe v. Thompson, 144 F.3d 627, 630 (10th Cir. 1998)(denial of early release pursuant to 28 C.F.R. § 550.58 and BOP program statement did not constitute an *ex post facto* violation because the challenged regulation did not affect the legal consequences of petitioner's crime or increase his punishment); Alexander v. Wendt, 127 Fed. Appx. 695, 696 (5th Cir. 2005)(finding no *ex post facto* violation where inmate was denied early release under § 3621(e)(2)(B) because "[t]he application of the program statements and regulations to [petitioner] merely deprived him of an opportunity to take advantage of a discretionary early-release provision. They did not increase the penalty for his offense").

**E.     Certificate of Appealability**

The Antiterrorism Act included several major reforms to the federal habeas corpus laws. Section 102 of the Antiterrorism Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended section 2253 provides that "a certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Petitioner has not demonstrated that he was denied any of his constitutional rights.

**III.    CONCLUSION**

For the foregoing reasons, the instant petition for writ of habeas corpus should be denied.  A certificate of appealability should also be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
Chief U.S. Magistrate Judge

Dated: July 31, 2006

cc:     The Honorable Maurice B. Cohill
        United States District Judge